UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:10CR439 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| | ) | |
| LOUIS D. AMIR, | ) | |
| | ) | |
| DEFENDANT. | ) | |

On September 9, 2011, following a four-day jury trial, defendant Louis Amir ("defendant" or "Amir") was convicted of wire fraud, conspiracy to commit wire fraud, money laundering, and perjury. (Jury Verdicts, Doc. No. 123.) He was sentenced to an aggregate term of imprisonment of 151 months. (Judgment, Doc. No. 150.) On appeal, the United States Court of Appeals for the Sixth Circuit remanded the matter to this Court for the limited purpose of determining whether defendant's Sixth Amendment right to counsel was violated when he received the assistance of standby counsel at a competency hearing. (Order of Remand, Sixth Circuit Case No. 11-4413, Appellate Doc. No. 167-1.) The Court conducted an evidentiary hearing on this issue on July 16, 2014, during which defendant was represented by counsel appointed by the Court. At the conclusion of the hearing, the Court took the matter under advisement.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 14, 2010, the government returned a 29-count indictment against defendant and two other individuals. (Indictment, Doc. No. 1.) The charges arose out of a series of financial transactions, taking place between October 2006 and February 2007, involving property in Cuyahoga County, Ohio. From the very outset of the action, defendant challenged the Court's subject matter jurisdiction, as well as its right to exercise personal jurisdiction over him. He has consistently maintained the position that he is not subject to the laws of the United States (including its criminal laws) because he has never "acquiesced in the benefits of the United States." (*See* Doc. No. 33 at 207 [quoting Doc. No. 31].)

The government raised the issue of defendant's competency to stand trial in a motion filed on October 25, 2010. (Doc. No. 12.) Following a hearing on the motion, the Court ordered defendant to submit to a mental evaluation. (Doc. No. 38.) In a report, dated March 15, 2011, Clinical Psychologist Dia Brannen opined that while defendant displayed symptoms consistent with a personality disorder and "will continue to be a challenge to work with," he was competent to stand trial. (Report, Doc. No. 54 [sealed] at 463.) Dr. Brannen did note, however, that defendant refused to participate in the evaluation process, and that he believed that he was an "expatriate of the United States." (*Id*. at 453.)

A competency hearing was held before a magistrate judge on March 31, 2011. Defendant requested that he be permitted to represent himself at the hearing. The magistrate judge granted defendant's request and appointed attorney Lawrence Whitney to serve as standby counsel. The government moved for the admission of the report, but

2

defendant declined to stipulate to its contents. Defendant advised the magistrate judge that he would not object to the report because he did not recognize the Court's jurisdiction over him. (Report and Recommendation, Doc. No. 57 at 467.) Following the hearing, the magistrate judge issued a report and recommendation that the Court find defendant competent to stand trial. (*Id*.) The Court adopted the report, and set the matter for trial.

At trial, defendant again requested that he be permitted to represent himself. Following a colloquy, the Court agreed to permit defendant to self-represent. Attorney Whitney continued in his role as standby counsel at trial. Consistent with his unwavering belief that the Court lacked jurisdiction to try him, defendant refused to participate in the trial. The Court, therefore, arranged for defendant to view a live feed of the trial from the holding cell in the Marshall's Office in the courthouse.

On appeal from the resulting conviction and sentence, the Sixth Circuit addressed the issue of competency. The court found that the "existing record [at the competency hearing] does not reflect an informed, strategic decision by standby counsel not to contest Amir's competency." (Order of Remand at 4.) The Sixth Circuit instructed the district court to conduct an evidentiary hearing to determine whether standby counsel provided "meaningful adversarial testing" of defendant's competency, consistent with *United States v. Cronic*, 466 U.S. 648, 659 (1984) and *United States v. Ross*, 703 F.3d 856 (6th Cir. 2012). The court further provided that "[i]f the district court determines that the *Cronic* standard was satisfied, and that Amir was not unconstitutionally deprived of counsel, the district court should deny relief. Otherwise, the conviction and sentence should be vacated." (*Id*. at 4.)

## II. EVIDENTIARY HEARING

Attorney Whitney and defendant were the only witnesses to testify at the evidentiary hearing held on July 16, 2014. An attorney with a career spanning nearly forty years, Whitney testified that the vast majority of his practice has been devoted to criminal defense in federal and state court. Whitney stated that he was familiar with the issues relating to a defendant's competency to stand trial and indicated that he had litigated the issue of competency in multiple cases over the course of his career. Whitney also testified that he had served as standby counsel three or four times in the past,[1] and he was adamant that—whether he was lead counsel or standby counsel—he had an independent obligation to advise the court if he had any concerns about a client's competency.

With respect to his representation of Amir, Whitney testified that he was appointed following a conflict with prior counsel. According to Whitney, he visited defendant at the detention facility where he was being held on three to five occasions and also arrived early to every hearing or court appearance in order to meet with defendant at the courthouse.[2] Whitney stated that defendant believed strongly in his jurisdictional defense, even though Whitney advised him that the defense lacked merit. Notwithstanding the fact that Whitney did not agree with defendant's assessment of the jurisdictional defense, Whitney indicated that he had no concerns about defendant's

---

[1] As to his understanding of his duties as standby counsel, Whitney testified that he was to offer advice regarding the specific issues that a defendant might have, acquaint the defendant with the procedures of a trial or a hearing, and provide him with any law to which he might not have access. In essence, "just generally to be whatever service the defendant wants and needs."
[2] Counsel also ensured that defendant received a copy of all of the pleadings, as they were filed in the case, and assisted him with filing whatever motions defendant wished to bring to the Court's attention.

competency. Whitney explained that he had known other defendants to have raised such a defense. While he viewed the defense as unwise, and wrote defendant a letter to that effect, his independent assessment of defendant's behavior (including defendant's ability to rationally and logically discuss matters relevant to his case) was that he was competent to stand trial.

After the government raised the question of competency, Whitney discussed the process with defendant. Whitney also spoke with the psychologist who was directed by the Court to evaluate defendant and offered his insights. After the psychologist's report was submitted, Whitney reviewed the report and hand-delivered a copy to defendant at the detention facility. Whitney testified that he agreed with the psychologist's assessment that defendant was competent to stand trial. When he met with defendant, Whitney recommended to defendant that he stipulate to the findings in the report.

Whitney also attended with defendant the hearing that followed the submission of the competency report. He testified that he made a strategic decision not to challenge the report, or cross-examine its author, because he agreed with the findings and conclusions contained in the report and because his own independent assessment of defendant was that he was competent to stand trial. For the same reason, he also determined that a consult with another psychologist was unnecessary. According to Whitney, these strategic decisions were made independent of defendant's belief that he was competent. Whitney also noted that, had he had a concern about defendant's competency, he would have brought it to the Court's attention, notwithstanding defendant's own view of his competency.

5

While Whitney knew that defendant had actually been "affronted" by the government's decision to raise the issue of competency, he was not surprised that defendant was nevertheless unwilling to stipulate to the findings in the report. Whitney explained that such behavior was consistent with defendant's overall trial strategy to not acknowledge the validity of the court proceedings.

Defendant also offered testimony at the evidentiary hearing. He took issue with Whitney's testimony that he had hand-delivered a copy of the report to him, suggesting, instead, that a case worker at the detention facility supplied him with a copy. Nonetheless, he conceded that counsel may have "alluded" to the fact that the report's author opined that defendant was competent to stand trial. Yet, at the same time, he suggested that Whitney did not even "inform me that he read the actual competency examination."

## II. GOVERNING LAW AND DISCUSSION

A defendant has a constitutional right to the assistance of counsel at every critical stage of a criminal prosecution. *Lafler v. Cooper*, -- U.S. --, 132 S. Ct. 1376, 1385 (2012); *see Kirby v. Illinois*, 406 U.S. 682, 689-90 (1972); *see also Van v. Jones*, 475 F.3d 292, 311-12 (6th Cir. 2007) ("It is settled that a complete absence of counsel at a critical stage of a criminal proceeding is a *per se* Sixth Amendment violation warranting reversal of a conviction, a sentence, or both, as applicable, without analysis for prejudice or harmless error.") (citations omitted). A hearing to determine a defendant's competency to stand trial is a critical stage for which a defendant is entitled to the effective assistance of counsel. *United States v. Ross*, 703 F.3d 856, 874 (6th Cir. 2012) (noting that "every federal court of appeals to take up the question [of whether a competency hearing is a

'critical' stage] has answered it affirmatively") (citation and quotation marks omitted). "The right to the effective assistance of counsel is[, in turn,] the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 656 (1984). Consequently, "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversarial process itself presumptively unreliable." *Id*. at 659.

In *Ross*, the court observed that it was possible that "participation by standby counsel during a competency hearing may be sufficient to overcome a denial of counsel claim." *Id*. at 871 (citing *United States v. Leggett*, No. 92-4269, 1994 WL 171441, at *2 (6th Cir. May 5, 1994)). Even where standby counsel does not challenge a mental assessment that the defendant is competent to stand trial, the court left open the possibility that such representation may still constitute "meaningful adversarial testing[.]" *Id*. at 874. To satisfy this standard under such circumstances, the court ruled that counsel must have, at a minimum, "(1) conducted an adequate investigation into [the defendant's] competency, including reading and analyzing [the evaluating medical professional's] report, and preparing for the hearing and (2) chose not to contest [the defendant's] competency based on his own strategic decision rather than a belief that he simply had no obligation to do so over [the defendant's] instructions." *Id*.

Following an evidentiary hearing on remand, the district court determined that standby counsel had provided meaningful adversarial testing of Ross's competency to stand trial. In reaching this conclusion, the court emphasized that standby counsel had conducted a thorough investigation into Ross's competency, read and analyzed the

7

competency report, prepared for the hearing, retained control over the strategic decisions relative to the hearing, chose not to contest the defendant's competence based on his own strategic decision, never entertained a belief that he was without obligation to contest competency, and provided Ross with appropriate representation. *United States v. Ross*, Case No. 07-20513, 2013 U.S. Dist. LEXIS 127094, at *3 (E.D. Mich. Sept. 6, 2013) (case available only through LEXIS).

Similarly here, the Court finds that attorney Whitney provided meaningful adversarial testing of defendant's competency at the competency hearing. In so ruling, the Court underscores the fact that counsel (1) discussed the issue of competency with defendant and provided reasoned and appropriate counsel to defendant relative to it, (2) reviewed and analyzed the competency report, (3) made a sound and deliberate strategic decision not to cross-examine Dr. Brennan or challenge the findings in her report, and (4) made an independent determination absent defendant's statements that consulting with an independent psychologist was unnecessary. The Court also finds significant the fact that counsel at all times retained the independent obligation to raise with the Court the issue of defendant's competency if he believed that defendant was not competent to stand trial. *Cf. United States v. Collins*, 430 F.3d 1260, 1262 (10th Cir. 2005) (absence of counsel at competency hearing where counsel "believing there had been a breakdown in the attorney-client relationship, did not comment on [defendant's] competency and did not introduce evidence that may have affected the competency determination").

Because standby counsel functioned as counsel at this critical stage, defendant's Sixth Amendment right to counsel at the competency hearing was not denied. This conclusion is not altered by the fact that counsel's strategic decision not to challenge

8

the competency report was consistent with both the defendant's and ultimately the government's view of defendant's competency. The fact that all participants in the process, in the final analysis, agreed that defendant was competent to stand trial does not take away from the meaningful, competent, and professional assistance provided by counsel.

At the evidentiary hearing, defense counsel argued that standby counsel should have requested an independent psychological evaluation, especially considering defendant refused to participate in the psychologist's evaluation of him. Of course, the question before the Court is not whether other criminal defense attorneys would have approached the issue of competency differently; rather, it need only determine whether the issue was subjected to meaningful, adversarial testing by counsel.[3] The Court finds that it was. Moreover, Whitney credibly testified that he viewed defendant's refusal to participate in the evaluation process to be consistent with his overall strategy of refusing to acknowledge the Court's jurisdiction and not a sign of incompetence. Based upon the Court's experiences with defendant, both prior to and during trial, the Court finds that

---

[3] At the evidentiary hearing, Whitney candidly admitted that he did not visit defendant as often as he would have with a retained or appointed client, and qualified many of his answers by noting that he was serving as standby counsel. The question of whether Whitney would have made more visits to a retained or appointed client is also not before the Court. Notwithstanding Whitney's disclaimer as to his representation of defendant, the Court remains convinced that the representation he did provide defendant at the competency hearing satisfied the "meaningful adversarial testing" standard found in *Cronic*. It is worth noting, too, that the Court found defendant's testimony challenging the quality and quantity of the effort Whitney expended on his behalf wholly incredible.

9

such a conclusion was rational and well-reasoned.[4] *See, e.g., United States v. Ford*. 184 F.3d 566, 581 (6th Cir. 1999) (trial court did not err in finding defendant competent to stand trial where trial strategy, while unwise, was not evidence of incompetence).

### III. CONCLUSION

Ultimately, the Court concludes that Whitney functioned as defendant's counsel during the competency hearing, subjecting the issue of competency to meaningful adversarial testing. Having reached this conclusion, the Court finds no reason to vacate defendant's conviction or sentence.

**IT IS SO ORDERED**.

Dated: August 21, 2014

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[4] At the beginning of this prosecution, the Court found defendant's unusual defense and resulting behavior to be peculiar, and it was this unorthodox behavior that initially prompted the Court to order a psychiatric evaluation. As the case progressed, however, the Court came to understand that defendant's behavior was both shrewd and carefully calculated to advance his defense agenda. Even at the evidentiary hearing in July, 2014, defendant demonstrated that he was able to read and understand the Sixth Circuit's order of remand and was able to present self-serving testimony that would be most useful to him in possibly securing a new trial or otherwise interfering with the judicial process.