**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:10-cr-439 |
| | ) | |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| LOUIS AMIR, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court are two filings by *pro se* defendant Louis Amir ("Amir"). First, Amir filed a document (Doc. No. 305) styled "Objection to Magistrate's Order of Detention which is of no [e]ffect[,]" which the Court construes as a motion to revoke the Order of Detention issued by Magistrate Judge Jonathan D. Greenberg. (*See* Doc. No. 304 (Order of Detention); Order [non-document], 7/23/2026.) Plaintiff United States of America (the "government") opposes the motion. (Doc. No. 312 (Response).) Second, Amir filed an "Objection" (Doc. No. 309) to the magistrate judge's report and recommendation ("R&R") recommending that the Court find that Amir has violated the terms of his supervised release. (*See* Doc. No. 306 (R&R).)

## I.    BACKGROUND

On November 21, 2011, the Court sentenced Amir to a custody term of 151 months, followed by three years of supervised release with conditions, after a jury convicted him of wire fraud, conspiracy to commit wire fraud, money laundering, and perjury. (Doc. No. 150 (Judgment); Doc. No. 123 (Jury Verdicts).) As part of his conditions of supervised release, he was required

report to his assigned probation officer within 72 hours of his release. (Doc. No. 150, at 4.) Thereafter, he was required to report to probation each month of his supervision, and to advise of any changes in his address. (*Id*.) Additionally, he was ordered to pay $6,592,637.00 in restitution. (*Id*. at 7.)

During his custodial term, Amir elected to not participate in any rehabilitation programs offered at his institution. (Doc. No. 310 (Transcript of Detention/Violation Hearing), at 24–25.) He also refused to participate in the Bureau of Prison's ("BOP") pre-release investigation, failed to assist in the preparation of a release plan, and refused to be released to a residential reentry center. (*Id*. at 20–24; *see* Doc. No. 290 (Violation Report).) While he advised his BOP case manger that he would be residing with a family member upon his release from custody, his case manager was unable to contact the family member at the address he supplied. (Doc. No. 290, at 1–2.) He also informed his case manager that he would not report to probation upon his release because he believed that he was wrongfully incarcerated and that supervision was against his constitutional rights. (*Id*. at 2.)

After completing his sentence, Amir was released from BOP custody on November 7, 2021.[1] (Doc. No. 210, at 28.) According to the Revised Violation Report, he failed to contact his probation officer within 72 hours of release. (Doc. No. 292, at 2.) When the U.S. Pretrial Services and Probation Office was unable to locate Amir following his release, a warrant was issued for his arrest. (Doc. No. 291 (Arrest Warrant, 11/17/2021).) Amir was taken into custody on June 15, 2026. (Doc. No. 292, at 1.) He is charged with failing to report within 72 hours of his release from

---

[1] At the time of his release, Amir had an outstanding restitution balance of $6,589,935.63. (Doc. No. 292 (Superseding Violation Report), at 1.)

BOP custody. (*Id*.)

On June 15, 2026, he had his initial appearance before the magistrate judge on the alleged supervised release violation. (Minutes of Proceedings [non-document], 6/15/2026.) Upon advising the magistrate judge that he did not wish to be represented by counsel, the magistrate judge appointed standby counsel. (*Id*.; CJA 20 Appointment [non-document] of Attorney Adam VanHo, 6/15/2026.) After several outbursts by Amir disrupted the proceedings, he was removed from the courtroom. At the conclusion of the arraignment, the magistrate judge granted the government's motion for detention pending a hearing, remanded Amir to the custody of the U.S. Marshals, and set the matter for a preliminary/detention hearing. (Minutes of Proceedings [non-document], 6/15/2026.)

On July 7, 2026, the magistrate judge conducted a preliminary/detention hearing. At the outset of the hearing, Amir objected to the proceedings, challenging both the magistrate judge's authority to conduct such a hearing without Amir's consent, as well as this Court's jurisdiction over him. (Doc. No. 310, at 7–9.) When Amir advised the magistrate judge that he would not participate in the hearing, Amir was removed from the courtroom and permitted to view the proceedings on closed circuit television from the Marshals' holding cell. (*Id*. at 12.) During the hearing, Probation Officer McKenna Mercier testified at length to Amir's failure to participate in any aspect of the prerelease investigation and his failure to report to his probation officer upon his release from custody. (*See id*. at 19–37.) At the conclusion of the hearing, the magistrate judge determined that there was probable cause for the case to proceed to a violation hearing. (*Id*. at 43.) The magistrate judge took the matter of detention under advisement. (*Id*.)

On July 20, 2026, the magistrate judge issued an Order of Detention, finding that Amir had

failed to meet his burden to show, pursuant to Fed. R. Crim. P. 32.1(a)(6) and by clear and convincing evidence, that he should be released pending resolution of his supervised release violation. (Doc. No. 304, at 2.) The magistrate judge cited Amir's "failure to participate in prerelease planning; his not providing valid information about his residence; his failure to report to [the U.S. Pretrial Services and Probation Office] within 72 hours of his release from [c]ustody; and his failure to make any meaningful payment of restitution" as a basis for concluding that "there are no conditions or combination of conditions that will ensure [Amir's] appearance." (*Id.*)

On July 22, 2026, the magistrate judge conducted a supervised release violation hearing. (Minutes of Proceedings [non-document], 7/22/2026.) On July 24, 2026, the magistrate judge issued an R&R, recommending that the Court find Amir in violation of the terms of his supervised release. (Doc. No. 306.) A final revocation hearing is scheduled for August 12, 2026.

## II.     MOTION TO REVOKE DETENTION ORDER

"A person held in custody for violating probation or supervised release must be taken without unnecessary delay before a magistrate judge." Fed. R. Crim. P. 32.1(a)(1). "The magistrate judge may release or detain the person under 18 U.S.C. § 3143(a)(1) pending further proceedings." Fed. R. Crim. P. 32.1(a)(6). Under § 3143(a)(1), the person must "be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released[.]" 18 U.S.C. § 3143(a)(1). "The burden of establishing by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community rests with the person." Fed. R. Crim. P. 32.1(a)(1)(6).

"If a person is ordered detained by a magistrate judge, . . . the person may file, with the

court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). Under this provision, the district court reviews the magistrate judge's detention order *de novo*. *See United States v. Montalvo-Murillo*, 495 U.S. 711, 716, 110 S. Ct. 2072, 109 L. Ed. 2d 720 (1990); *United States v. Legg*, 211 F.3d 1271 (Table), 2000 WL 553990, at *1 (6th Cir. Apr. 28, 2000); *see also United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992) (When the court reviews a magistrate judge's detention order, it "acts *de novo* and must make an independent determination of the proper pretrial detention or conditions of release." (citation omitted)).

As part of its *de novo* review, the Court has reviewed the Violation Report (Doc. No. 290), the Superseding Violation Report (Doc. No. 292), the Order of Detention (Doc. No. 304), the transcript from the detention hearing (Doc. No. 310), the parties' briefing (Doc. Nos. 305, 312), and other relevant documents and filings in this case. Based upon this record, the Court finds that Amir has not proven by clear and convincing evidence that he will not flee if released on bond.

The majority of Amir's objections are devoted to his baseless challenges to the Court's jurisdiction, and its authority to impose conditions of supervised release, enforce its judgments, and litigate supervised release violations. (*See, e.g.,* Doc. No. 305, Obj. No. 23 ("The defendant rebuts the presumption that U.S. District Judge Sara Lioi has the power to place the defendant on supervised release[.]" (capitalization omitted)).) Amir raises identical challenges in his objections (Doc. No. 309) to the R&R, and the Court will address these objections in its discussion of the R&R, *infra*. Beyond these empty attacks upon the Court's authority, Amir offers nothing that would rebut the presumption in favor of detention.

The Court has also considered whether less restrictive means, such as electronic monitoring and home detention, would ensure that he would appear for any proceedings associated with the present supervised release violation. Given Amir's complete unwillingness to cooperate with U.S. Pretrial Services and his probation officer regarding his release, his continued failure report to probation for five years after his release, and his refusal to participate in the subsequent proceedings before the magistrate judge, the Court has serious doubts that Amir would comply with any condition or combination of conditions the Court might impose. Amir's bare, conclusory statement that he "rebuts" the magistrate judge's finding that no condition or combination of conditions that would assure his appearance in court (*see* Doc. No. 305, Obj. No. 8) in no way assuages the Court's reservations. Additionally, given that he still owes a substantial amount of restitution, the Court shares the magistrate judge's concern that Amir has a significant incentive to flee or otherwise avoid detection. Ultimately, the Court finds, pursuant to Rule 32.1(a)(6), that Amir has failed to show that he is unlikely to flee if released. His motion to revoke detention is denied.

### III.     OBJECTIONS TO THE R&R

Amir's "objection" to the R&R is a carbon copy of the "objection" he filed seeking to revoke the magistrate judge's detention order. (*Compare* Doc. No. 305; *with* Doc. No. 309.) As noted above, Amir takes issue with every aspect of the Court's authority and jurisdiction, arguing that he did not consent to any of the federal criminal proceedings against him. (*See* Doc. No. 305, Obj. Nos. 2–7, 9–11, 17.) He raised similar challenges at trial, suggesting that he was not subject to the laws of the United States, and that he had never "acquiesced in the benefits of the United States." (*See, e.g.*, Doc. No. 31 (Notice of Recission), at 3 ¶ 9.) The Court dispensed with these

meritless arguments with haste. (Doc. No. 33 (Opinion and Order), at 3.) He now attacks the Court's authority to impose supervised release, with conditions, and to adjudicate supervised release violations. (*See id*. Obj. Nos. 9–11, 18–23.) In raising such baseless concerns, Amir again endorses the type of "meritless rhetoric" often employed by sovereign citizens. *See United States v. Coleman*, 871 F.3d 470, 476 (6th Cir. 2017) (collecting cases rejecting complaints based on claims of sovereign citizenship). As the Sixth Circuit has explained:

> The "sovereign citizen" movement is a highly disperse, antigovernment movement. . . . In general, sovereign citizens believe that the United States Government . . . is a fraud and that they, the sovereign citizens, retain an individual common law identity exempting them from the authority of those fraudulent government institutions.

*United States v. Gooch*, 595 F. App'x 524, 527 n.1 (6th Cir. 2014) (quotation marks and citation omitted); *see United States v. Bentley*,  No. 24-5433, 2025 WL 3642418, at *5 (6th Cir. Dec. 16, 2025) ("The sovereign citizen movement is amorphous and decentralized, but those who have studied the movement describe one of its central tenants as the belief that the modern federal government lacks jurisdiction over non-consenting individuals." (citations omitted)). Courts routinely reject such frivolous arguments "without extended [discussion]." *Bey v. McCandless*, No. 1:22-cv-554, 2023 WL 2972947, at *2 (N.D. Ohio Feb. 28, 2023) (quotation marks and citation omitted), *report and recommendation adopted in relevant part*, *Bey v. Officer McCandless*, 2023 WL 2704143 (N.D. Ohio Mar. 30, 2023); *see Davis v. McClain*, No. 2:19-cv-3466, 2019 WL 5853474, at *3 (S.D. Ohio Nov. 8, 2019) (collecting cases rejecting arguments by prisoners that federal or state governments have no jurisdiction over them because they are "sovereign citizens"). Amir offers no other challenge to the Court's jurisdiction to impose supervised release and to hear alleged violations of the terms of supervision.

7

"Congress has authorized district courts to include supervised release as part of a defendant's sentence, even in the case where the statute violated does not mandate a term of supervised release." *United States v. Ossa-Gallegos*, 491 F.3d 537, 539–40 (6th Cir. 2007) (citing 18 U.S.C. § 3583(a)). "In addition to specific, enumerated conditions that the district court must impose as part of supervised release, 18 U.S.C. § 3583(d) provides that "the court may order, as a further condition of supervised release . . . any other condition it considers to be appropriate," provided it is reasonably related to the sentencing factors in 18 U.S.C. § 3553, consistent with the relevant policy statements issued by the United States Sentencing Commission, and does not result in a deprivation of liberty greater than necessary. *Id*. (cleaned up). The discretion (and, in certain instances, the duty) to impose conditions on terms of supervision includes the power to restrict travel, impose restitution, prescribe the consumption of illicit substances, and prohibit future violations of federal and state law. 18 U.S.C. § 3583(d).

Moreover, Fed. R. Crim. P. 32.1 sets forth the procedure for revoking or modifying a term of supervision. Under Rule 32.1(b)(1)(A), a person, like Amir, who is alleged to have violated his conditions of supervised release is entitled to a preliminary hearing "to determine whether there is probable cause to believe that a violation occurred." Fed. R. Crim. P. 32.1(b)(1)(A). If the magistrate judge finds probable cause exists, the judge "must conduct a revocation hearing." Fed. R. Crim. P. 32.1(b)(1)(C). Here, the magistrate judge has made a finding of probable cause to believe that a violation has occurred, and has recommended that the Court find Amir has violated his supervised release. Amir has, therefore, received and continues to receive the process due him under the law and the United States Constitution.

Given the Court's clear authority to impose a term of supervised release, set conditions for

that supervision, and adjudicate violations of the terms of supervision, Amir's arguments to the contrary amount to "meritless rhetoric" that the Court may summarily reject.[2] *See Coleman*, 871 F.3d at 476. The Court will conduct a final revocation hearing on August 12, 2026, at which time the Court will address Amir's remaining objections to the extent they appear to challenge the sufficiency of the evidence supporting the alleged supervised release violation. (*See* Doc. No. 309, Obj. Nos. 12–16.)

## IV. CONCLUSION

For the foregoing reasons, Amir's motion (Doc. No. 305) to revoke the magistrate judge's detention order is DENIED, and his objections (Doc. No. 309) to the R&R, to the extent they challenge the Court's jurisdiction, are OVERRULED.

**IT IS SO ORDERED**.

Dated: August 11, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[2] Amir has continued to submit baseless filings associated with his motion to revoke the detention order and his objections to the R&R, each time challenging the Court's authority to conduct criminal proceedings. (*See* Doc. Nos. 313–15.) These filings in no way alter the Court's resolution of Amir's motion to revoke the detention order or his objections to the R&R.